1

2

3

4                        UNITED STATES DISTRICT COURT

5                      NORTHERN DISTRICT OF CALIFORNIA

6

7    JEREMIAH JOSEPH JOHNSON,                 Case No. 20-cv-04803-EMC

8              Plaintiff,

9         v.                                  ORDER GRANTING IN PART AND
                                              DENYING IN PART DEFENDANTS'
10   S. A. MALDONADO, et al.,                 MOTION FOR SUMMARY
                                              JUDGMENT
11             Defendants.
                                              Docket No. 31

12

13

14                    **I.       INTRODUCTION**

15        In this *pro se* prisoner's civil rights action, Jeremiah Johnson alleges an excessive force

16   claim against three members of the correctional staff at Pelican Bay State Prison ("PBSP").

17   Defendants now move for summary judgment.  For the reasons discussed below, Defendants'

18   motion for summary judgment will be granted in part and denied in part: Mr. Johnson's claim is

19   dismissed as to Defendant Powers, but triable issues of fact on Mr. Johnson's claim require denial

20   of the motion as to Defendants Maylin and Maldonado.  The Court will refer this case to the *Pro*

21   *Se* Prisoner Mediation Program.

22                    **II.      BACKGROUND**

23        The following facts are undisputed unless otherwise stated:

24        The relevant events occurred on October 3, 2019, at Pelican Bay State Prison ("PBSP").

25   At the time, Mr. Johnson was a prisoner at PBSP.  The three Defendants worked at PBSP:

26   Defendant Powers worked as a Correctional Sergeant and Defendants Maldonado and Maylin

27   worked as Correctional Officers.  FAC at 2.

28        At 8:30 a.m., Mr. Johnson was walking out to the yard when he was subjected to a clothed

United States District Court
Northern District of California

1    body search.  *See id*. at 3; *see also* MSJ at 3.  A non-defendant officer told Mr. Johnson to remove

2    his shoes, and Mr. Johnson refused because the ground was wet.  *See* FAC at 3; MSJ at 3.

3    Because Mr. Johnson refused to comply with the full clothed body search, he was escorted inside

4    and subjected to an unclothed body search.  *See* FAC at 3; MSJ at 3.

5         After the search was concluded, Mr. Johnson reclothed himself.  *See id*. at 3; MSJ at 3.

6    Here the parties' versions diverge.

7    A.    Mr. Johnson's Version

8         As Mr. Johnson was almost finished putting his clothes back on, Defendant Powers

9    ordered Defendant Maylin to "get him."  FAC at 3.  Defendant Maylin struck Mr. Johnson while

10   he was bent over.  *See id*.  Then Defendant Maldonado "slammed" Mr. Johnson while yelling

11   "stop resisting," although Mr. Johnson was not resisting.  *See id*.  Mr. Johnson was put on the

12   ground where Defendant Maldonado put him in a headlock.  *See id*.  In his Opposition, for the first

13   time, Mr. Johnson said he also was "cho[]ked, punched, beaten," and his limbs were "twisted

14   in[to] extremely painful positions."  Opp. at 3.  Mr. Johnson was in pain and could not breath, but

15   did not resist being handcuffed.  *See* FAC at 3.  Mr. Johnson alleges he "was injured and will

16   need knee surgery."  *Id*. at 4.  In his Opposition, for the first time, Mr. Johnson also stated he

17   sustained injuries to his right lip and right shoulder.  *See* Opp. at 6.

18   B.    Defendants' Version

19        Once Mr. Johnson finished getting dressed, Defendant Powers ordered him to return to his

20   cell, and directed correctional officers to take him there.  *See* MSJ at 3.  Mr. Johnson refused to

21   comply with this order.  *See id*. at 4.  Defendant Maldonado placed his hand on Mr. Johnson's left

22   arm to escort him to his cell.  *See id*.  Mr. Johnson pulled his arm away and threw it back toward

23   Defendant Maldonado's face in an attempt to strike him.  *See id*.  Defendant Maldonado was able

24   to duck out of the way of Mr. Johnson's arm.  *See id*.

25        To protect themselves and to stop Mr. Johnson's assault, Defendants Maldonado and

26   Maylin wrapped their arms around Mr. Johnson and used their body weight to take Mr. Johnson to

27   the ground.  *See id*.  Mr. Johnson resisted Defendants' efforts to handcuff him.  *See id*.  Defendant

28   Maldonado ordered Mr. Johnson to cease resisting, but Mr. Johnson persisted.  *See id*.  Three

United States District Court
Northern District of California

2

1 additional officers were required to subdue Mr. Johnson and to restrain him.  *See id*. at 5.

2   Non-defendant officers then escorted Mr. Johnson to an evaluation by medical staff.  *See*

3 *id*.  Defendants contend that photographs by medical staff show only a scratch to Mr. Johnson's

4 elbow, with no other evidence of injury.  *See id*. at 19.

5         **III.**  **VENUE AND JURISDICTION**

6   Venue is proper in the Northern District of California because some of the events or

7 omissions giving rise to the complaint occurred at a prison in Del Norte County, which is located

8 within the Northern District.  *See* 28 U.S.C. §§ 84(a), 1391(b).  The Court has federal question

9 jurisdiction over this action brought under 42 U.S.C. § 1983.  *See* 28 U.S.C. § 1331.

10       **IV.**  **LEGAL STANDARD FOR SUMMARY JUDGMENT**

11   Summary judgment is proper where the pleadings, discovery and affidavits show that there

12 is "no genuine dispute as to any material fact and [that] the moving party is entitled to judgment as

13 a matter of law."  Fed. R. Civ. P. 56(a).  A court will grant summary judgment "against a party

14 who fails to make a showing sufficient to establish the existence of an element essential to that

15 party's case, and on which that party will bear the burden of proof at trial . . .  since a complete

16 failure of proof concerning an essential element of the nonmoving party's case necessarily renders

17 all other facts immaterial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  A fact is

18 material if it might affect the outcome of the lawsuit under governing law, and a dispute about

19 such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict

20 for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

21   The moving party bears the initial burden of identifying those portions of the record which

22 demonstrate the absence of a genuine dispute of material fact.  The burden then shifts to the

23 nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions,

24 answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a

25 genuine issue for trial.'"  *Celotex*, 477 U.S. at 324.  Once the burden shifts to the non-moving

26 party, that party must go beyond the pleadings and, by its own affidavits or discovery, "set forth

27 specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The non-

28 moving party "must show more than the mere existence of a scintilla of evidence."  *In re Oracle*

United States District Court
Northern District of California

1    *Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Liberty Lobby*, 477 U.S. at 252).

2    "[T]he non-moving party must come forth with evidence from which a jury could reasonably

3    render a verdict in the non-moving party's favor." *Id.* (citing *Liberty Lobby*, 477 U.S. at 252).  If

4    the non-moving party fails to make this showing, "the moving party is entitled to judgment as a

5    matter of law." *Celotex*, 477 U.S. at 323.

6          A court's obligation to view evidence in the light most favorable to the non-movant does

7    not require it to ignore undisputed evidence produced by the movant.  *See L.F. v. Lake Wash. Sch.

8    Dist.*, 947 F.3d 621, 625 (9th Cir. 2020).  Even pro se litigants must identify or submit some

9    competent evidence to support a claim.  *See Soto v. Sweetman*, 882 F.3d 865, 873 (9th Cir. 2018)

10   (plaintiff not entitled to equitable tolling where he failed to submit any competent evidence in his

11   opposition).  Nor is it the task of the district court to scour the record in search of a genuine issue

12   of triable fact.  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  A party opposing summary

13   judgment must identify with reasonable particularity the evidence that precludes summary

14   judgment.  *Id.; see also Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1028-29, 1031 (9th Cir.

15   2001) (even if there is evidence in the court file which creates a genuine issue of material fact, a

16   court may grant summary judgment if the opposing papers do not include or conveniently refer to

17   that evidence).

18         A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is

19   based on personal knowledge and sets forth specific facts admissible in evidence.  *See Schroeder

20   v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint

21   as opposing affidavit even though verification not in conformity with 28 U.S.C. § 1746, plaintiff

22   stated under penalty of perjury that contents were true and correct, and allegations were not based

23   purely on his belief but on his personal knowledge).  Statements of fact in Mr. Johnson's FAC are

24   considered as evidence in evaluating the motion for summary judgment because he verified the

25   FAC.  *See* FAC at 10.

26         A court's function on a summary judgment motion is not to make credibility

27   determinations or weigh conflicting evidence with respect to a disputed material fact.  *See T.W.

28   Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  The evidence must

United States District Court
Northern District of California

4

1   be viewed in the light most favorable to the nonmoving party, and inferences drawn from the facts

2   must be viewed in the light most favorable to the nonmoving party.  *See id*. at 631.

3                                     **V.        DISCUSSION**

4           At the initial review stage, the Court found cognizable Mr. Johnson's claim that

5   correctional sergeant Powers and correctional officers Maldonado and Maylin used excessive

6   force upon Mr. Johnson in violation of the Eighth Amendment.  *See* Docket No. 15 at 1-2.

7   Defendants Powers, Maldonado, and Maylin now move for summary judgment on the merits of

8   Mr. Johnson's claim.[1]  *See* Docket No. 31 ("Summary Judgment Motion" or "MSJ").  Mr.

9   Johnson opposes the summary judgment, *see* Docket No. 36 ("Opposition"), and Defendants have

10  filed a reply, *see* Docket No. 37 ("Reply").

11          For the reasons stated below, Defendant Powers is entitled to summary judgment in his

12  favor.  Defendants Maylin and Maldonado are not entitled to summary judgment because triable

13  issues of fact exist as to Mr. Johnson's excessive force claim against these two Defendants.

14  A.      Excessive Force

15          The unnecessary and wanton infliction of pain on a prisoner amounts to cruel and unusual

16  punishment prohibited by the Eight Amendment.  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

17  "[W]henever prison officials stand accused of using excessive physical force in violation of the

18  Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied

19  in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause

20  harm."  *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).

21          In determining whether the use of force was for the purpose of maintaining or restoring

22  discipline, or for the malicious and sadistic purpose of causing harm, a court may evaluate the

23  need for application of force, the relationship between that need and the amount of force used, the

24  extent of any injury inflicted, the threat reasonably perceived by the responsible officials, and any

25  efforts made to temper the severity of a forceful response.  *See Hudson*, 503 U.S. at 7; *see also*

26

27  ───────────────

28  [1] In the Summary Judgment Motion, Defendants also argued that Mr. Johnson had failed to
    exhaust his claim.  *See* MSJ at 7-12.  Defendants withdrew this argument in their Reply.  *See*
    Reply at 8.

United States District Court
Northern District of California

1    *Spain v. Procunier*, 600 F.2d 189, 195 (9th Cir. 1979) (guards may use force only in proportion to

2    need in each situation).

3                    1.        Defendant Powers

4              The sole allegation against Defendant Powers is that he ordered other correctional officers

5    to "get" Mr. Johnson.  FAC at 3.  However, Mr. Johnson admitted in a deposition that he neither

6    heard Defendant Powers say, "get him," as Mr. Johnson had averred in the FAC, nor did Mr.

7    Johnson read Defendant Powers's lips as Defendant Powers made such a statement.  *See* Docket

8    No. 31-3 ("Deposition") at 36-37.  Specifically, Mr. Johnson admitted that he "can't hear real

9    well, so if I can't see [someone], I can't hear [that person]," and that he "wasn't looking at"

10   Defendant Powers when Defendant Powers spoke.  *Id*. at 36:25-37:2.  He speculated that

11   Defendant Powers said, "get him" "because Maylin acted at that point," *id*. at 38:20-21, but

12   admitted that Defendant Powers could have said "any two syllables," *id*. at 17:13-14.

13             Mr. Johnson's allegation that Defendant Powers told the other Defendants to "get him"

14   does not raise a triable issue of material fact.  Mr. Johnson has admitted he has no personal

15   knowledge that Defendant Powers ever made such a statement, *see* Depo. at 17:13-14, 36:25-

16   38:21, and submits no evidence beyond his own speculation that Defendant Powers did so.

17   Although Mr. Johnson's FAC is verified, and a verified complaint may be used as a declaration to

18   oppose summary judgment, *see Schroeder*, 55 F.3d at 460, the allegations therein still must "be

19   made on personal knowledge, set forth facts that would be admissible in evidence, and show that

20   the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).

21   Because Mr. Johnson did not actually hear or see Defendant Powers instruct the other Defendants

22   to "get him," that personal knowledge is lacking here.  *Cf. Schroeder*, 55 F.3d at 460 & n.12

23   (prisoner-plaintiff's complaint sufficed as an opposing declaration made on personal knowledge

24   because he stated that prison officials made allegedly retaliatory statements *to him*).  In short, Mr.

25   Johnson's unsubstantiated allegation is the sort of "speculation, conjecture, or fantasy" that will

26   not preclude summary judgment.  *Moody v. St. Charles County*, 23 F.3d 1410, 1412 (8th Cir.1994)

27   (quoting *Gregory v. Rogers*, 974 F.2d 1006, 1010 (8th Cir.1992)).  *See also Parks v. McEvoy*, No.

28   C-12-5094 EMC (PR), 2015 WL 435463, at *4–5 (N.D. Cal. Feb. 2, 2015) (applying Moody to

United States District Court
Northern District of California

United States District Court
Northern District of California

1    reject speculative allegations and grant summary judgment motion), *aff'd*, 621 F. App'x 390 (9th

2    Cir. 2015); *Johnson v. Bay Area Rapid Transit Dist.*, No. C-09-0901 EMC, 2013 WL 6155266, at

3    *9 (N.D. Cal. Nov. 22, 2013) ("[C]onclusory, speculative testimony in affidavits and moving

4    papers is insufficient to raise triable issues of fact and defeat summary judgment.") (citation

5    omitted).

6           Mr. Johnson fails to show a triable issue of fact that Defendant Powers actually told the

7    other Defendants to "get him."  When the evidence is viewed in the light most favorable to Mr.

8    Johnson, and inferences therefrom drawn in his favor, no reasonable jury could return a verdict for

9    him and against Defendant Powers.  Defendant Powers therefore is entitled to judgment as a

10   matter of law on the Eighth Amendment claim.

11          2.      Defendants Maylin and Maldonado

12          It is undisputed that Mr. Johnson was strip-searched and that a use of force followed the

13   strip search.  However, as noted *supra* II, there is a dispute as to whether the force was needed and

14   how much force was used.  *See Hudson*, 503 U.S. at 7 (stating a court may consider these factors,

15   among others, to determine whether the force was necessary to restore discipline or was malicious

16   and sadistic).

17          Defendants argue that officers needed to use force on Mr. Johnson because Mr. Johnson

18   attempted to assault Defendant Maldonado.  *See* MSJ at 15-16.  Defendants provide multiple

19   declarations stating that, as Defendant Maldonado placed his hand on Mr. Johnson's arm to escort

20   him back to his cell, Mr. Johnson attempted to strike Defendant Maldonado in the face.  *See*

21   Docket No. 31-1 ("Maylin Declaration") at ¶ 11; Docket No. 31-8 ("Clifton Declaration") at ¶ 6;

22   Docket No. 31-10 ("Maldonado Declaration") at ¶ 11; Docket No. 31-11 ("Powers Declaration")

23   at ¶ 11; Docket No. 31-13 ("Harris Declaration") at ¶ 6.  Mr. Johnson, by contrast, avers that he

24   "never attempted to strike an officer," FAC at 4, and has maintained this position throughout this

25   action, *see generally*, Deposition.  It also is disputed whether Mr. Johnson resisted being

26   handcuffed, necessitating the further exertion of force to subdue him.  *Compare* FAC at 3 ("I

27   never resisted.") *with* Maldonado Decl. ¶¶ 14-15 (describing efforts by Mr. Johnson to resist being

28   handcuffed); Maylin Decl. ¶¶ 14-15 (same); Harris Decl. ¶¶ 9-11; Love Decl. ¶ 7 (same); Clifton

7

United States District Court
Northern District of California

1   Decl. ¶ 10 (same).  There thus is a dispute as to whether force needed to be applied to Mr. Johnson

2   in the first instance, and whether Mr. Johnson's resistance required the continuing application of

3   force.

4         It is undisputed that officers took Mr. Johnson to the ground.  *See* FAC at 3, MSJ at 16.

5   However, it is disputed whether Mr. Johnson was "struck by [Defendant] Maylin" and "slammed"

6   by Defendant Maldonado in the process of taking him down.  *Compare* FAC at 3 (making these

7   allegations) *with* Maldonado Decl. ¶ 18 ("I never struck Mr. Johnson . . . ."); Maylin Decl. ¶ 18 ("I

8   did not strike Mr. Johnson during this incident."); Powers Decl. ¶ 19 ("I did not see any officer

9   strike Mr. Johnson . . . and would have seen if this occurred."); Harris Decl. ¶ 13 ("I did not see

10  Officer Maylin or any officer strike Mr. Johnson . . . .").  There thus is a dispute as to the amount

11  of force that was applied to Mr. Johnson.

12        As noted above, the United States Supreme Court has held that "the core judicial inquiry is

13  . . . whether force was applied in a good-faith effort to maintain or restore discipline, or

14  maliciously and sadistically to cause harm."  *Hudson*, 503 U.S. at 6-7.  Here the parties dispute

15  whether discipline needed to be restored, and whether the force used was minimal and appropriate

16  or excessive and sadistic.  If believed, Mr. Johnson's evidence would support a finding that force

17  was unnecessary in the first instance, and that excessive force was used; if believed, Defendants'

18  evidence would support a finding that there was no excessive force.  It is hard to imagine

19  questions which could be more material to an excessive force claim.  For this reason, Defendants

20  Maylin and Maldonado are not entitled to summary judgment on Mr. Johnson's excessive force

21  claim.

22  B.     Qualified Immunity

23        The defense of qualified immunity protects "government officials . . . from liability for

24  civil damages insofar as their conduct does not violate clearly established statutory or

25  constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457

26  U.S. 800, 818 (1982).  The doctrine of qualified immunity attempts to balance two important and

27  sometimes competing interests: "the need to hold public officials accountable when they exercise

28  power irresponsibly and the need to shield officials from harassment, distraction, and liability

1    when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  To

2    determine whether a government official is entitled to qualified immunity, courts must consider

3    (1) whether the official's conduct violated a constitutional right, and (2) whether that right was

4    "clearly established" at the time of the alleged misconduct.  *Pearson*, 555 U.S. at 232.

5        Defendants contend they are entitled to qualified immunity because "[r]easonable officials

6    . . . could not have known that taking down an inmate to stop the inmate's assaultive behavior was

7    unlawful."  MSJ at 20.  However, this presupposes that Defendants' evidence is true and Mr.

8    Johnson's evidence is false.  As noted above, it is disputed whether Mr. Johnson engaged in

9    assaultive behavior, and whether Defendants' use of force was confined to a take-down.

10       The same triable issues of fact that preclude summary judgment on the merits of Mr.

11   Johnson's claim preclude summary judgment on the defense of qualified immunity.  That is,

12   viewing the evidence in the light most favorable to Mr. Johnson, a reasonable jury could find that

13   Defendants took part in the use of excessive force.  If such is proven, Defendants would not be

14   entitled to summary judgment on the basis of qualified immunity.

15   C.    Referral to *Pro Se* Prisoner Mediation Program

16       This case appears a good candidate for the court's mediation program.  Good cause

17   appearing therefor, this case is now referred to Magistrate Judge Illman for mediation or

18   settlement proceedings pursuant to the *Pro Se* Prisoner Mediation Program.  The proceedings will

19   take place within 120 days of the date this order is filed.  Magistrate Judge Illman will coordinate

20   a time and date for mediation or settlement proceedings with all interested parties and/or their

21   representatives and, within five days after the conclusion of the proceedings, file with the Court a

22   report on those proceedings.

23       Plaintiff must attend and participate in the mediation or settlement conference proceedings.

24   The conference may be set up so that he will appear in person, by videoconference, or by

25   telephone; Plaintiff must attend whatever format Magistrate Judge Illman chooses.  Plaintiff is

26   cautioned that he may be sanctioned for failure to comply with an order to participate in a

27   mediation or settlement conference, and such sanctions may include dismissal of part or all of the

28   action.  *See* Fed. R. Civ. P. 16(a), (f), and 41(b).

United States District Court
Northern District of California

9

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## VI.    CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**.  Docket No. 31.  The motion is granted as to Defendant Powers, who is entitled to judgment as a matter of law on Mr. Johnson's excessive force claim because Mr. Johnson produced only speculative allegations against Defendant Powers.  The motion is denied as to Defendants Maylin and Maldonado because there are triable issues of material fact on Mr. Johnson's excessive force claim against them.

This action is now referred to Magistrate Judge Illman for mediation or settlement proceedings pursuant to the *Pro Se* Prisoner Mediation Program.  The Clerk shall send a copy of this order to Magistrate Judge Illman.

This order disposes of Docket No. 31.

**IT IS SO ORDERED**.

Dated: March 9, 2023

_____
EDWARD M. CHEN
United States District Judge

10